UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
In Re: ORLY GENGER,                    :
                                       :
                          Debtor,      :
                                       :
-------------------------------------- :    24cv8076 (DLC)
                                       :
ADBG LLC, ET AL.,                      :    OPINION AND
                                       :          ORDER
                          Appellants,  :
                                       :
            -v-                        :
                                       :
SAGI GENGER, ET AL.,                   :
                                       :
                          Appellees.   :
                                       :
-------------------------------------- X

APPEARANCES:

For appellants ADBG LLC, Arnold Broser, David Broser,
individually and as trustee of the Genger Litigation Trust, and
Tedco, Inc.:
Carl W. Mills
Christopher Charles Gartman
Christopher K. Kiplok
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

For appellant Arie Genger:
Frank A. Oswald
Togut, Segal & Segal LLP
One Penn Plaza 3335
New York, NY 10119

For appellees Sagi Genger, TPR Investment Associates, Inc., The
Sagi Genger 1993 Trust, and D&K Limited Partnership:
John Dellaportas
Thomas Angelo Pitta
Emmet, Marvin & Martin LLP
120 Broadway, 32nd Floor
New York, NY 10271

For appellees The Orly Genger 1993 Trust, Manhattan Safety
Maine, Inc., and Recovery Effort, Inc:
Adam Lewis Pollock
Anna Menkova
Pollock Cohen LLP
111 Broadway, Suite 1804
New York, NY 10006

For appellee Dalia Genger:
Ira Daniel Tokayer
Law Offices of Ira Daniel Tokayer, Esq.
420 Lexington Ave, Suite 2400
New York, NY 10170

DENISE COTE, District Judge:

The Honorable James L. Garrity, Jr., United States
Bankruptcy Judge for the Southern District of New York, denied
the Bankruptcy Trustee's motion for approval of a settlement
agreement negotiated by the Trustee with some of the creditors
of the bankruptcy estate.  Those creditors and related parties
have appealed that decision.  For the following reasons, the
decision of the Bankruptcy Court is affirmed.

## **Background**

The background to this appeal is set forth in detail in the
Bankruptcy Court's October 5, 2024 Memorandum Decision.  See
Genger, No. 19-13895 (JLG), 2024 WL 4438857 (Bankr. S.D.N.Y.
Oct. 5, 2024).  The facts necessary to decide this appeal are
stated below and are drawn from the record in the underlying
bankruptcy case.

In brief, this appeal arises out of a settlement agreement proposed to the Bankruptcy Court on May 28, 2021, by the Trustee, the debtor Orly Genger ("Orly"), her husband, her father Arie Genger ("Arie") and some of Orly's other creditors and parties related to those creditors ("Agreement"). The Agreement would have resolved a tangle of litigation that followed a June 2013 settlement to which Orly was a party ("2013 Agreement"). The Trustee argued that the Bankruptcy Court's approval of the Agreement would pave the way for resolution of Orly's Chapter 7 bankruptcy case.

The Bankruptcy Court declined to approve the Agreement. It reasoned that the Agreement improperly barred objecting creditors, including Orly's mother, Dalia Genger ("Dalia"), and the trust to which Orly is a beneficiary, the Orly Genger 1993 Trust ("Orly Trust"), from continuing pending litigation related to the 2013 Agreement and from objecting to Orly's discharge from bankruptcy. Certain parties to the Agreement, but not the Bankruptcy Trustee, have appealed.

The background that follows describes: 1) a 2004 transfer of shares in a company, Trans-Resource, Inc. ("TRI"), to, among others, the Orly Trust; 2) the 2013 Agreement, which sought to resolve disputes resulting from the 2004 transfer of TRI shares; and 3) the underlying Bankruptcy Court proceedings, including

3

the terms of the Agreement and the Bankruptcy Court's decision not to approve the Agreement.

I.    2004 Transfer of TRI Shares and Resulting Litigation

In 1985, Arie founded TRI, a fertilizer company, as a wholly-owned subsidiary of TPR Investment Associates, Inc. ("TPR").  Several years later, Arie and his then-wife Dalia formed two trusts for the benefit of their two children, Orly and her brother Sagi Genger: the Orly Trust and the Sagi Genger 1993 Trust ("Sagi Trust").

In 2001, a group of investors (the "Trump Group", unrelated to the United States' President) purchased a minority stake in TRI under an agreement that restricted future transfers of TRI stock (the "2001 Stockholders Agreement").  A transfer of shares made in violation of the 2001 Stockholders Agreement would be void, and non-transferring shareholders would have the right to purchase any invalidly transferred shares.  At the time, Arie was a majority shareholder of TPR, which held 52.85% of the TRI stock.

In October 2004, Arie and Dalia divorced.  As part of their divorce agreement, Arie caused TPR to transfer its controlling stake in TRI in three distributions to Arie (the "Arie Shares"), to the Orly Trust (the "Orly Trust Shares"), and to the Sagi Trust (the "Sagi Trust Shares") (collectively, the "2004 Stock Transfers").

Arie did not notify the Trump Group of the 2004 Stock Transfers of TRI stock. In August 2008, the Trump Group sued TPR, claiming that the 2004 Stock Transfers violated the 2001 Stockholders Agreement and seeking to acquire the Arie, Orly Trust, and Sagi Trust Shares. See Glenclova Inv. Co. v. Trans-Resources, Inc., No. 08cv7140, ECF No. 1 (S.D.N.Y. filed Aug. 11, 2008).

The Sagi Trust, TPR -- acting through Sagi as its President -- and the Trump Group entered a two-part settlement in August 2008. This included an agreement for the Trump Group to purchase the Sagi Trust Shares for $26.7 million. The agreement, however, quickly fueled additional litigation in Delaware and New York state courts. See TR Inv'rs, LLC v. Genger, 2010 WL 2901704 (Del. Ch. July 23, 2010), aff'd, 26 A.3d 180 (Del. 2011); TR Inv'rs, LLC v. Genger, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010), rev'd in part, 26 A.3d 180 (Del. 2011); see also Genger v. Genger, 2013 WL 221485 (N.Y. Sup. Ct. 2013).

II. The 2013 Agreement

The Delaware and New York State litigation led to the 2013 Agreement, executed in June of 2013. Pursuant to that agreement, Orly (individually and in her capacity as beneficiary of the Orly Trust), Arie, and Arnold Broser and David Broser

(and several of their related entities)[1], on the one hand, and the Trump Group, on the other, agreed to a settlement. The Trump Group agreed to pay $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million) to resolve all disputes between the parties, including as to the ownership of all TRI shares. The promissory notes do not become payable until all legal actions related to the Gengers are no longer pending against the Trump Group. The parties also agreed to have the state court "enter a definitive non-appealable order" declaring that the Trump Group owned "all right, title and interest" to the shares of TRI purportedly transferred by TPR in October 2004 to Arie and to the Orly Trust. Finally, Orly waived all claims that she may have had to ownership of any TRI shares in her individual capacity or as beneficiary of the Orly Trust.

The 2013 Agreement sparked a new wave of litigation. Since its execution, different parties have brought different actions disputing who is entitled to the proceeds from the 2013 Agreement -- i.e., the $17.3 million in cash and two promissory notes of $7.5 million. That question is at the heart of the Agreement and this appeal.

---

[1] David and Arnold Broser own ADBG LLC. ADBG LLC provided litigation funding to Arie that supported various lawsuits that were settled by the 2013 Agreement.

III. Bankruptcy Court Proceedings

On July 12, 2019, Orly commenced a voluntary bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas.  The case was transferred on December 10, 2019, to the United States Bankruptcy Court for the Southern District of New York.

Sagi/TPR, the Orly Trust, and Dalia filed proofs of claim in Orly's Chapter 7 proceeding.  Each also filed an objection to Orly's discharge from bankruptcy.

On May 28, 2021, the Bankruptcy Trustee filed a motion for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the Agreement between the Trustee, Orly, and certain other parties (the "Settling Parties").[2]  The Settling Parties agreed to pay $2.5 million to the Bankruptcy Estate, in two payments: (i) a $300,000 "Non-Refundable Settlement Payment," to be paid upon execution of the

---

[2] The Agreement was between the Trustee, on the one hand, and, on the other hand, Orly, Eric Herschmann (Orly's husband), Arie, Kasowitz Benson Torres LLP (individually and in its capacity as escrow agent), David Broser (individually and in his capacity as trustee of the Genger Litigation Trust), Arnold Broser, ADBG LLC, Tedco, Inc., Lance Harris (in his capacity as trustee of the Genger Litigation Trust), the Genger Litigation Trust, Michael P. Bowen, and Claims Pursuit, Inc.  Arie, Herschmann, ADBG LLC, the Genger Litigation Trust, and Kasowitz Benson Torres LLP had each filed proofs of claim in Orly's bankruptcy.

Agreement; and (ii) $2.2 million to be paid within twenty-one days of the Effective Date of the executed Agreement.[3]

Crucially for purposes of this appeal, the Agreement also seeks to end the competing claims for the 2013 Agreement proceeds through the use of releases, a permanent injunction, and the dismissal of pending actions, as set out in the Trustee's Rule 9019 motion. Specifically, the motion requests the Bankruptcy Court to release the Settling Parties from all claims related to the 2013 Agreement and enter a permanent injunction pursuant to Bankruptcy Rule 9019. That injunction would bar "any creditor of the Bankruptcy Estate", anyone acting with them, or any person whose claim in any way arises relates to the 2013 Agreement proceeds from asserting claims against the Bankruptcy Estate or the Settling Parties.

The motion requests the Bankruptcy Court to permanently enjoin the prosecution of ten pending legal actions (the "Target Actions") -- three of which are described in detail below -- as well "any similar actions against any of the Parties hereto that are derivative or duplicative of the claims settled hereunder, or that could have been pursued by the Trustee." The Agreement declared that its terms were non-severable and that it is void if a Court holds any term invalid.

---

[3] The Agreement also provides for transfer of Orly's interest in her condominium home to Herschmann, Orly's husband.

The Sagi Trust, Sagi, TPR, and the Orly Trust each opposed the Trustee's motion.  Dalia, collectively with the Sagi Trust, Sagi/TPR, and the Orly Trust, joined the Sagi/TPR objection and the Orly Trust objection.  Recovery Effort, Inc. ("REI") and Manhattan Safety Maine, Inc. ("MSM") -- two entities affiliated with the Orly Trust -- joined the Orly Trust objection.  The Bankruptcy Court held a hearing on the Trustee's motion on August 24, 2021.

On October 5, 2024, the Bankruptcy Court denied the Trustee's Rule 9019 motion.  In its decision, the Bankruptcy Court explained that, while prior litigation and the 2013 Agreement had resolved the competing claims to ownership of the TRI stock, there remained an active dispute over the ownership of the proceeds due under the 2013 Agreement.  On one side of that dispute are the Settling Parties, all of whom are aligned with Orly in support of the Agreement, and on the other are the parties who are objecting to the Agreement.  If the Bankruptcy Court approved the Agreement, that would resolve the competing claims to the proceeds from the 2013 Agreement and the status of various proofs of claim filed in the Orly bankruptcy.

The Bankruptcy Court gave several reasons for its rejection of the Agreement.  It observed that the Agreement "likely does not satisfy" the factors governing whether a settlement is fair and equitable set forth in In re Iridium Operating LLC, 478 F.3d

452, 462-63 (2d Cir. 2007).  Genger, 2024 WL 4438857, at *15.
The Bankruptcy Court observed that there is a "real issue"
regarding the settlement of the claims that Orly fraudulently
transferred proceeds from the 2013 Agreement.  Id. at *23.  The
non-settling parties would be paid only "cents-on-the-dollar, if
at all, while the Settling Parties would keep the assets that
the non-settling parties contend do not belong to them."  Id.

After noting its concerns over the fairness and equity of
the Agreement, the Bankruptcy Court rested its rejection of the
Agreement on two grounds.  The Bankruptcy Court held that four
of the Target Actions could not be enjoined because their claims
were not the property of Orly's estate.  Separately, it held
that the Trustee does not have the authority to "settle" the
discharge objections in Orly's bankruptcy filed by Dalia,
Sagi/TPR, and the Orly Trust.

A notice of appeal was filed on October 19, 2024 by ADBG
LLC, Arnold Broser, David Broser, individually and as trustee of
the Genger Litigation Trust, Tedco, Inc., and Arie Genger
("Appellants").[4]  Each of the appellants was a Settling Party.
The Trustee did not appeal the Bankruptcy Court's decision.  The
Orly Trust (and with it, REI and MSM), Dalia, and Sagi and TPR

---

[4] Arie, ADBG LLC, and the Genger Litigation Trust are creditors
of Orly.  Both ADBG LLC and Tedco, Inc. are entities affiliated
with the Brosers.

have filed briefs in support of the Bankruptcy Court's decision.
The appeal was fully submitted on February 14, 2025.

## Discussion

The Bankruptcy Court properly rejected the Agreement.
First, at least three of the Target Actions are not property of
Orly's estate.  The Bankruptcy Court was therefore correct in
concluding that it is without authority to enjoin the non-
settling creditors from pursuing that litigation.  Second, the
Bankruptcy Court correctly determined that the Trustee cannot
use a Rule 9019 motion to settle the objections by creditors to
Orly's discharge from bankruptcy.  Each of these issues is
discussed below.

I.   Three Target Actions are not property of Orly's Estate.

Bankruptcy court decisions are subject to appellate review
in the first instance by a federal district court.  See 28
U.S.C. § 158.  In an appeal from a decision of a bankruptcy
court, a district court reviews "the bankruptcy court's findings
of fact for clear error" and "its legal determinations de novo."
In re Nordlicht, 115 F.4th 90, 104 (2d Cir. 2024) (citation
omitted).

When a debtor files for bankruptcy, the automatic-stay
provision of the Bankruptcy Code, 11 U.S.C. § 362, "operates to
prevent certain creditors from pursuing their own remedies
against the debtor's property."  In re Tronox Inc., 855 F.3d 84,

99 (2d Cir. 2017) (citation omitted).  "Congress's intent was to protect all creditors by making the trustee the proper person to assert claims against the debtor."  Id. (citation omitted). "This reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion."  Id. (citation omitted).

In addition, § 105(a) of the Bankruptcy Code authorizes a court to issue "any order" that is "necessary or appropriate to carry out the provisions" of the Code.  11 U.S.C. § 105(a). This includes the power "to enjoin claims against a non-debtor third party" where the bankruptcy court has jurisdiction to do so regardless of whether such claims "are subject to the terms of the automatic stay."  Picard v. Fairfield Greenwich Ltd., 762 F.3d 199, 211 (2d Cir. 2014).  A bankruptcy court's jurisdictional power extends only to those suits, however, that might have a "conceivable effect" on the bankruptcy estate.  Id. (citation omitted).

Put differently, a bankruptcy court's power to enjoin claims against a third party is typically limited to those cases involving "property of the estate."  In re Bernard L. Madoff Inv. Sec. LLC, 740 F.3d 81, 88 (2d Cir. 2014).  It goes without saying that not all claims that may be asserted by a creditor of an estate are "property of the estate."  In re Nordlicht, 115 F.4th at 105.

"General" claims -- often called "derivative" claims --
"arise from the harm done to the estate" and accordingly "could
be brought by any creditor." Id. at 105 & n.7 (citation
omitted). Such claims are property of the estate because they
"inure to the benefit of all creditors" by enlarging the estate,
"making the trustee the proper person to assert the claim." Id.
at 105 (citation omitted). The "paradigmatic" example of claims
general to all creditors are fraudulent transfer claims,
"because every creditor has a similar claim for the diversion of
assets of the debtor's estate." Id. at 106 (citation omitted).
The "factual origins of this injury, are, by their nature,
general to all creditors," and, if proven, the result would be
that "the fraudulent-conveyance scheme wronged every creditor."
Id. (citation omitted).

In contrast, "personal claims" -- sometimes called
"particularized" or "direct" claims -- are "claims for injury
that are particular to the creditor, and in which other
creditors generally have no interest." Id. at 105 & n.8
(citation omitted). Creditors "are exclusively entitled to
pursue personal claims, and the bankruptcy trustee is precluded
from doing so." Id. at 105. (citation omitted).

Accordingly, in crafting injunctions, bankruptcy courts
must be careful to distinguish between general claims and
personal claims. In re Tronox Inc., 855 F.3d at 100. In this

inquiry, "labels are not conclusive." In re Nordlicht, 115
F.4th at 105-06 (citation omitted). Rather, courts "inquire
into the factual origins of the injury and, more importantly,
into the nature of the legal claims asserted." Id. at 106
(citation omitted). The "touchstone for bankruptcy jurisdiction
remains" whether the outcome of a suit "might have any
conceivable effect on the bankruptcy estate." In re Quigley
Co., Inc., 676 F.3d 45, 57 (2d Cir. 2012) (citation omitted).

Here, the Bankruptcy Court determined that four Target
Actions were not property of the estate.[5] It is only necessary
to address its reasoning as to three of the four Target Actions.
In each case the Bankruptcy Court correctly determined that it
was without power to enjoin the Target Actions.[6]

Of the three Target Actions, the first was brought by REI
and MSM, two entities related to the Orly Trust.[7] See Manhattan

---

[5] The Bankruptcy Court held that it could properly enjoin three
actions brought by Sagi since the claims in those actions were
derivative, arising from alleged harm to Orly's estate. That
determination is not challenged on appeal.

[6] The Bankruptcy Court identified a fourth Target Action, see
Orly Genger 1993 Trust v. Genger, No. 20-01188 (Bankr. S.D.N.Y.)
("Orly Trust Turnover Action"), as also involving claims that
were not property of Orly's estate.

[7] REI is a wholly owned subsidiary of the Orly Trust. Before
filing a proof of claim in Orly's bankruptcy, on June 13, 2019,
the Orly Trust sold and assigned to REI all right, title, and
interest of the Orly Trust to the $32.3 million disbursed as
part of the 2013 Settlement Agreement. MSM is a Maine
corporation that was also formed in June 2019. It received from

Safety Maine, Inc. v. Bowen, No. 19-5642 (S.D.N.Y.) ("MSM
Action"). The second was brought in New York state court by
Arie and Orly, individually and derivatively on behalf of the
Orly Trust. Dalia, as then-trustee of the Orly Estate, filed a
motion in that lawsuit to be substituted as plaintiff to pursue
the Orly Trust's claims. See Genger v. Genger, No. 651089/2010,
NYSCEF No. 1108 (N.Y. Sup. Ct. Aug. 11, 2014) ("Dalia
Substitution Motion"). The third is an adversary proceeding
brought by Dalia in Orly's bankruptcy. See Genger v. Genger,
No. 20-01010-jlg, (Bankr. S.D.N.Y.) ("Dalia Constructive Trust
Action").

A.    MSM Action

The MSM Action was filed on June 17, 2019 in this District
by MSM and REI, who are assignees of TPR and the Orly Trust.
They have sued Bowen, Arie, the Brosers, the Genger Litigation
Trust, ABDG LLC, Tedco, Inc., and "John Does 1-10" to recover
$32.3 million of the 2013 Agreement proceeds. See First Amended
Complaint, MSM Action, No. 19-5642, ECF No. 48 (S.D.N.Y., Nov.
8, 2019). MSM and REI allege that the 2013 Agreement resolved
claims concerning shares of TRI in which the Orly Trust claimed
an ownership interest, but that, despite this, certain proceeds
from the 2013 Agreement were transferred to entities controlled

_____

TPR an assignment of right, title, and interest in any funds
owed by the Orly Trust to TPR.

by Arie and the Brosers, not the Orly Trust.  The MSM Action
does not allege harm done to Orly's estate, but rather harm done
to the Orly Trust.  Any recovery that may be obtained from the
MSM Action could not, therefore, "inure to the benefit of all
[Orly's] creditors by enlarging the estate."  In re Nordlicht,
115 F.4th at 105 (citation omitted).  Put differently, this is
not a claim that any creditor of Orly could assert; only the
Orly Trust and its assignees may do so.

Appellants concede on appeal that the Orly Trust, as the
Bankruptcy Court determined, is "a spendthrift trust" and
"separate from Orly's estate."  Genger, 2024 WL 4438857, at *27.
They argue, however, that the Bankruptcy Court improperly
credited the MSM Action's allegations that the Orly Trust is
entitled to proceeds from the 2013 Agreement and failed "to give
the same credence to the allegations (by Sagi and the Trustee)
that those same proceeds belong to Orly."  Relying on In re
Granite Partners, L.P., 194 B.R. 318, 325 (Bankr. S.D.N.Y.
1996), appellants contend that the Trustee needs to make only a
"prima facie demonstration that Orly or her Estate has an
alleged claim to [the 2013 Agreement proceeds]."  Upon that
showing, they contend, any action asserting an interest in those
proceeds may be enjoined by the Bankruptcy Court.

The appellants misconstrue In re Granite Partners, L.P.  It
explains that, in evaluating whether a creditor's claim is a

personal or a general one, a court does "not pass on the legal sufficiency of the claims" asserted because to do otherwise would "invade the province" of the district court where that action is pending. Id. at 325-26. Accordingly, the Bankruptcy Court did not err when it observed that "if" the theory of recovery in the MSM Action is sound, "then it is not Orly, and thus not her creditors generally, who would recover, but only the Orly Trust." Genger, 2024 WL 4438857, at *27.

Appellants next contend that, even if the Orly Trust is a separate legal entity, the MSM Action is "fundamentally" an action seeking relief based on Orly's allegedly improper acts relating to the 2013 Agreement proceeds. This argument also fails. Whatever Orly's role in the alleged fraudulent transfers, it remains true that the MSM Action seeks a recovery for the Orly Trust, as the rightful owner of those proceeds.[8]

B.  Dalia Substitution Motion

The Dalia Substitution Motion arises out of New York state court litigation filed in 2010 by Orly, both individually and derivatively on behalf of the Orly Trust, against various defendants including the Trump Group. See Genger v. Genger, No.

---

[8] Finally, appellants contend that the MSM Action is a general claim subject to the Bankruptcy Court's jurisdiction because the Orly Trust, an "assignor of the claims asserted in the MSM Action," filed a proof of claim in Orly's bankruptcy. Appellants do cite any case law supporting that proposition, and the Court has found none.

651089/2010 (N.Y. Sup. Ct. 2013).  Following the execution of

the 2013 Agreement, Dalia, as then-trustee of the Orly Trust,

sought to be substituted as plaintiff for the Orly Trust's

claims asserted in that action, arguing that the Orly Trust was

entitled to the proceeds of the 2013 Agreement and that Orly no

longer represented the interests of the Orly Trust.  Genger v.

Genger, No. 651089/2010, NYSCEF No. 1108 (N.Y. Sup. Ct. Aug. 11,

2014) ("Dalia Substitution Motion").  The state court, on

February 19, 2019, denied Dalia's Substitution Motion as moot.

Id., NYSCEF No. 1520 (N.Y. Sup. Ct. Feb. 19, 2019).  Dalia

appealed.  Id., NYSCEF No. 1529 (N.Y. Sup. Ct. Mar. 22, 2019).

Dalia's appeal has apparently been stayed as a result of Orly's

bankruptcy.

The Bankruptcy Court determined that, as with the MSM

Action, the Dalia Substitution Motion alleges harms suffered by

the Orly Trust, not by Orly.  The core issue in the Dalia

Substitution Motion, as the Bankruptcy Court explained, is

whether the Orly Trust's claims against the Trump Group were

settled under the 2013 Agreement.

For the reasons already explained, the Bankruptcy Court's

decision as to the Dalia Substitution Motion was correct.

Appellants' challenges to that decision repeat arguments that

have already been discussed and rejected.

C.    Dalia Constructive Trust Action

Finally, the Bankruptcy Court correctly determined that the Dalia Constructive Trust Action is not property of Orly's estate.  The Dalia Constructive Trust Action is an adversary proceeding filed by Dalia in Orly's bankruptcy on June 7, 2020.  The Bankruptcy Court dismissed Dalia's Constructive Trust Action on August 12, 2021, and on September 1, 2024 it denied Dalia's motion for reconsideration of that dismissal.  On March 17, 2025, the Court affirmed the decision of the Bankruptcy Court.  In re Genger, 2025 WL 835795, at *1.  On April 8, 2025, Dalia appealed.

Through this action, Dalia seeks enforcement of a constructive trust for her own benefit of up to $12.25 million plus interest and demands that the two promissory notes conveyed as part of the 2013 Agreement be delivered to her.  To support these equitable claims, Dalia alleges that "Orly promised to pay Dalia from the monetized proceeds" realized in the 2013 Agreement, but that "Orly fraudulently transferred" approximately $17.3 million and two promissory notes that Orly "obtained" in the 2013 Agreement to creditors and/or business partners of Arie and to one of Orly's attorneys.

It is not necessary here to pass on the legal sufficiency of Dalia's claims, which survive only insofar as Dalia has appealed the decisions dismissing her claims.  Dalia's claims

are for imposition of a constructive trust.  If she is correct
that Orly held property for her in trust, that property would
not be property of Orly's estate.  "Congress plainly excluded
[from a bankrupt's estate] property of others held by the debtor
in trust at the time of the filing of the petition."  United
States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983)
(citing 11 U.S.C. § 541); see also In re Howard's Appliance
Corp., 874 F.2d 88, 93 (2d Cir. 1989).

Appellants argue that Dalia's Constructive Trust Action may
be enjoined because it seeks recovery of a portion of the
proceeds from the 2013 Agreement.  While this correctly
describes the funds at issue, it does not reach the relevant
issue.  The action seeks property that Dalia alleges Orly held
in trust at the time Orly filed her bankruptcy petition.

Before moving to the next issue, one further observation is
in order.  The appellants argue that the Bankruptcy Court failed
to apply the correct legal standard in the analysis of the
Target Actions.  They contend that the Bankruptcy Court should
have considered not only whether the Target Actions are
derivative but also whether they are "duplicative" of estate
claims.  This argument fails.

In In re Bernard L. Madoff Inv. Sec. LLC, the Court of
Appeals for the Second Circuit affirmed a bankruptcy court's
power to enjoin claims that are "derivative or duplicative" of

claims that "could have been or were asserted" by a bankruptcy trustee.  740 F.3d 81, 87, 89 (2d Cir. 2014).  It did not, however, distinguish "duplicative" from "derivative" claims. Rather, it affirmed that a bankruptcy court may enjoin claims that are "derivative or duplicative", which were terms that the bankruptcy court had used in its injunction.  Id.  Recently, the Second Circuit explained that claims are either "general" (i.e., property of the estate) or "personal" (i.e., not property of the estate).  In re Nordlicht, 115 F.4th at 105.  That distinction between general and personal claims is the touchstone for defining a bankruptcy court's jurisdiction, a distincton which the Bankruptcy Court in this case correctly applied.

II.  The Agreement Cannot Be Used to Settle the Discharge
     Objections.

     The Agreement also seeks an order from the Bankruptcy Court to permanently enjoin and dismiss the objections to Orly's discharge from bankruptcy filed by Sagi/TPR, Dalia, and the Orly Trust.  Sagi/TPR and Dalia opposed Orly's discharge from bankruptcy, invoking 11 U.S.C. § 727, and sought a declaration that certain Orly debts were non-dischargeable under 11 U.S.C. § 523.  The Orly Trust similarly sought to have the Trust's claims against Orly excepted from discharge under § 523.  As the Bankruptcy Court found, a bankruptcy trustee may not use a Rule

9019 motion, designed for approval of a settlement agreement, to dismiss discharge objections.

A Chapter 7 debtor qualifies for an order discharging all of his debts if he satisfies the conditions in § 727(a) of the Bankruptcy Code.  11 U.S.C. § 727(a).  Section 523, however, excepts certain types of debt from discharge under § 727.  Thus, "[a] discharge granted under § 727(a) frees the debtor from all debts existing at the commencement of the bankruptcy proceeding other than obligations § 523 of the Code excepts from discharge."  Kontrick v. Ryan, 540 U.S. 443, 447 (2004).  "Because the Code allows discharge of nearly all debts in bankruptcy, exceptions to discharge are important."  In re Chalasani, 92 F.3d 1300, 1309 (2d Cir. 1996).  As the Bankruptcy Court concluded, the Trustee cannot settle claims brought under §§ 523 and 727 over the objection of the creditors who brought those claims.

Appellants contend that the Trustee may settle the discharge objections because they are "duplicative" of actions that the Trustee could have asserted.  But as the Bankruptcy Court observed, these objections are not property of the estate. They belong to the individual creditors.

Appellants further argue that because bankruptcy courts may place conditions on dismissal of § 727 claims, citing In re Hass, 273 B.R. 45, 52 (Bankr. S.D.N.Y. 2002), the Trustee must

necessarily have power to settle those claims.  It is true that Bankruptcy Rule 7041 provides that a "bankruptcy court may condition discharge on such 'terms and conditions' as it deems proper." In re Chalasani, 92 F.3d at 1310 (quoting Fed. R. Bankr. 7041); see also In re Hass, 273 B.R. at 52 (same).  This empowers Bankruptcy Courts to fashion "case-appropriate remedies," for example, that a complaint "not be dismissed before other parties have opportunity to prosecute [the] original complaint." In re Chalasani, 92 F.3d at 1312-13.  It does not, however, empower trustees to settle § 727 claims without the consent of the parties bringing those claims.

## Conclusion

The October 5, 2024 Memorandum Decision of the United States Bankruptcy Court for the Southern District of New York is affirmed.

Dated:    New York, New York
          April 24, 2025

_____
DENISE COTE
United States District Judge

23